UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

IN RE:
LOUIS B. BULLARD,                                    Chapter 13
        DEBTOR.                              Case No. 10-23503-WCH

**MEMORANDUM OF DECISION**

## I. INTRODUCTION

The matter before the Court is the "Objection to Confirmation of Third Amended Chapter 13 Plan" (the "Objection") filed by Hyde Park Savings Bank ("Hyde Park") and the "Response to Objection to Confirmation of Plan by Creditor Hyde Park Savings Bank" (the "Response") filed by Louis B. Bullard (the "Debtor"). The question presented by the Objection is whether a debtor through his Chapter 13 plan may bifurcate a secured creditor's claim and then pay the secured portion of the claim over a period longer than the maximum five year term of a Chapter 13 plan.[1] For the reasons set forth below, I find that such treatment is incompatible with the provisions of the Bankruptcy Code and will sustain the Objection.

## II. BACKGROUND

The facts necessary to resolve this issue are straightforward and undisputed. The Debtor owns real property located at 318 Union Street in Randolph, Massachusetts (the "Property"). Hyde Park holds a mortgage on the Property which secures a promissory note in the original

---

[1] The Objection also challenges the Debtor's valuation of the real property that is subject to Hyde Park's secured claim, but the parties agreed that this issue would be deferred pending a ruling on the permissibility of the Debtor's proposed treatment of Hyde Park's claim.

1

principal amount of $387,000 and a maturity date of June 1, 2035.[2] The Debtor commenced the present case by filing a Chapter 13 petition on December 14, 2010. On June 17, 2011, Hyde Park filed a proof of claim in the amount of $346,006.54. The proof of claim does not reflect the existence of any prepetition arrears. Although the parties do not agree as to the current value of the Property, the Debtor and Hyde Park each providing competing appraisals in the amounts of $245,000 and $285,000, respectively, it is undisputed that the Property's value is substantially less than Hyde Park's claim.

On January 7, 2012, the Debtor filed the Third Amended Chapter 13 Plan (the "Plan"). Through the Plan, the Debtor proposes to bifurcate Hyde Park's secured claim into secured and unsecured components, further providing that:

> [t]he Confirmation Order shall effectively reduce the secured claim held by Hyde Park Savings Bank to the value of the real estate securing the loan (318 Union St. Randolph MA). The unsecured portion of the claim shall be treated consistently with all other claims in this plan. Pursuant to Section 1322(b)(5) the Debtors shall continue to make monthly payments as determined by the terms of the note. . . .[3]

Under the Plan, the unsecured portion of Hyde Park's claim would receive a dividend of approximately 5.26%. The payments on the secured portion of the claim would be paid directly by the Debtor to Hyde Park.

On February 16, 2012, Hyde Park filed the Objection. The Debtor filed the Response on March 1, 2012. I conducted a hearing on the Objection on April 26, 2012, and at the conclusion of oral arguments, took the matter under advisement. After the hearing, the parties each filed supplemental memoranda of law.

---

[2] At the hearing on the Objection, Hyde Park stated that it had no objection to bifurcation based upon the "nature" of the Property. I understand this to mean that Hyde Park's claim is not "secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2).

[3] Plan, Docket No. 77 at 4.

2

III. <u>POSITIONS OF THE PARTIES</u>

    <u>Hyde Park</u>

Hyde Park argues that the Bankruptcy Code affords Chapter 13 debtors only two options for the treatment of secured claims: (1) cure any arrearage and maintain payments under 11 U.S.C. § 1322(b)(5); or (2) modify the rights of the holder of the secured claim pursuant to 11 U.S.C. § 1322(b)(2) and pay the claim in full during the term of the plan. Citing *In re Pires*[4] and *In re Bell*,[5] Hyde Park asserts that courts have consistently rejected "hybrid plans" like the one proposed by the Debtor and sanctioned by *In re McGregor*[6] and its progeny which seek to combine those two options. As such, Hyde Park contends that the Plan cannot be confirmed because the Debtor impermissibly seeks to both modify its claim and maintain payments for a period exceeding the duration of the Plan.

    <u>The Debtor</u>

While the Debtor concedes that the Plan is what is commonly referred to as a "hybrid plan," he denies that he proposes to modify Hyde Park's rights pursuant to 11 U.S.C. § 1322(b)(2). Instead, the Debtor asserts that he is doing no more than what is expressly permitted by 11 U.S.C. § 1322(b)(5), as set forth in *In re McGregor*. He contends that the issue now before me hinges on the meaning of the phrase "modify the rights of holders of secured claims" contained in 11 U.S.C. § 1322(b)(2), and that Hyde Park's position is inconsistent with the definition of an "allowed secured claim" and otherwise ignores the distinction between a modification of "rights" and a modification of "claims."

---

[4] *In re Pires*, No. 09-18708-FJB, 2011 WL 5330772 (Bankr. D. Mass. Nov. 7, 2011).

[5] *Bell v. Bankowski (In re Bell)*, No. 10-10870-DJC, 2011 WL 2712755 (D. Mass. July 12, 2011).

[6] *In re McGregor*, 172 B.R. 718 (Bankr. D. Mass. 1994).

3

The Debtor begins with the premise that 11 U.S.C. § 506(a) defines the nature of a secured claim such that an allowed secured claim is only secured to the extent of the value of the property securing it. As such, he argues a plain reading of the statute not only permits, but necessitates bifurcation of an undersecured claim into secured and unsecured portions based upon the value of the property. "To claim otherwise," the Debtor urges, "would not only go against common sense, but also negate the clearly defined provisions of 506(a) of the Bankruptcy Code."[7]

With this in mind, the Debtor submits that because

> section 506(a) permits bifurcation of a claim into secured and unsecured portions, it stands to reason that section 1322(b)(5) cannot be construed other than to allow the Debtor to continue the contractually due payments on the secured portion of the bifurcated claim beyond the term of the plan pursuant to the terms of the underlying contract. To interpret otherwise, would render section 1322(b)(5) moot.[8]

He relies on *In re McGregor* for the proposition that "[subsection (b)(5)'s] command is complied with so long as payments are maintained on the 'secured claim.'"[9] The alternative, the Debtor maintains, "would require the Debtor to pay all debts . . . during the life of the plan, which in most cases, would be impossible and ultimately defeat the purpose and intent of Chapter 13 . . . ."[10] He concludes:

> In sum, to equate bifurcation of a claim into secured and unsecured portions pursuant to 506(a) with modification of a creditor's rights pursuant to section 1322(b)(2) would not only be inaccurate, but prejudicial. Such an interpretation would nullify section 506(a) and allow the secured creditor to redefine the nature of its claim and treat an otherwise unsecured claim, as defined by the code, as a

---

[7] Debtor's Memorandum of Law in Support of Bifurcation of a First Mortgage on a Multi-Family Principal Residence Property ("Debtor's Memorandum"), Docket No. 95 at 4.

[8] *Id.* at 6.

[9] *In re McGregor*, 172 B.R. at 721.

[10] Debtor's Memorandum, Docket No. 95 at 8.

secured claim. Such an outcome would unfairly prejudice the general unsecured creditors and provide the secured creditor with an unfair advantage.[11]

## IV. DISCUSSION

As recognized by Chief Judge Bailey of this district in *In re Pires*, "Chapter 13 offers two distinct and well-established options for treatment of secured claims, especially mortgage loans."[12] One option is that a plan may "modify the rights of holders of secured claims. . . ." pursuant to 11 U.S.C. § 1322(b)(2).[13] A modification under this section may include bifurcation of the claim into secured and unsecured components pursuant to 11 U.S.C. § 506(a), which provides that

> [a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.[14]

Under this approach, both the secured and unsecured components of the claim would be paid through the plan, with the unsecured component receiving a dividend, typically much less than 100%, by the Chapter 13 trustee over the term of the plan.[15] Put simply, the debtor is able to "strip off" a portion of the lien without full repayment.

Nevertheless, modification pursuant to 11 U.S.C. § 1322(b)(2) is subject to three limitations that, on a practical level, substantially reduce its availability. First, 11 U.S.C. § 1322(b)(2) expressly prohibits modification where the claim is "secured only by a security

---

[11] *Id.*

[12] *In re Pires*, 2011 WL 5330772 *3.

[13] 11 U.S.C. § 1322(b)(2).

[14] 11 U.S.C. § 506(a).

[15] *See In re Harris*, 200 B.R. 745 (Bankr. D. Mass. 1996) (modified claims must be paid through the plan).

5

interest in real property that is the debtor's principal residence."[16] Although ambiguous, the United States Court of Appeals for the First Circuit has held that this anti-modification provision "does not bar modification of a secured claim on a multi-unit property in which one of the units is the debtor's principal residence and the security interest extends to the other income-producing units."[17] Second, 11 U.S.C. § 1322(b)(2) is subject to 11 U.S.C. § 1322(d), which states that "the plan may not provide for payments over a period that is longer than . . . 5 years."[18] Third, because the modified secured claim is "provided for by the plan," the plan violates 11 U.S.C. § 1325(a)(5)(B)(ii) unless it provides for payment of the present value of the modified secured claim.[19] As a result of these last two limitations, a debtor must pay the secured component of the

---

[16] *Id.*

[17] *Lomas Mortg., Inc. v. Louis*, 82 F.3d 1, 7 (1st Cir. 1996).

[18] 11 U.S.C. § 1322(d). The prefatory language of 11 U.S.C. § 1322(b) actually states that it is "[s]ubject to subsections (a) and *(c)* of this section," but courts have uniformly concluded that this is a drafting error resulting from the Bankruptcy Reform Act of 1994, which created a new subsection (c) and moved the five year plan limitation to a new subsection (d) without altering the cross-reference. *See*, *e.g.*, *In re Koper*, 284 B.R. 747, 752 n.10 (Bankr. D. Conn. 2002).

[19] Section 1325(a)(5)(B) provides in relevant part:

> (5) with respect to each allowed secured claim provided for by the plan—
>
> * * *
>
> (B)(i) the plan provides that--
>   (I) the holder of such claim retain the lien securing such claim until the earlier of--
>     (aa) the payment of the underlying debt determined under nonbankruptcy law; or
>     (bb) discharge under section 1328; and
>   (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
> (iii) if--
>   (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
>   (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan . . . .

11 U.S.C. § 1325(a)(5)(B).

6

modified secured claim in full within the five year term of the plan, effectively pricing this option out of the reach of most debtors.[20]

> The second option, provided by 11 U.S.C. § 1322(b)(5), is that a plan may,
>
> notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due. . . .[21]

The Bankruptcy Code does not define "maintenance of payments," but courts have interpreted this provision to mean the original contractual payments of principal and interest over the time frame specified in the note.[22] Therefore, by its own terms, 11 U.S.C. § 1322(b)(5) modifies the rights of the secured creditor only to the extent that it expressly permits the debtor to cure a default through the plan despite any contractual term to the contrary. Such a modification is made "notwithstanding" the prohibitions contained in 11 U.S.C. § 1322(b)(2).[23] Using this option, a debtor may pay a prepetition arrearage in full through the plan and, upon plan completion, the default is deemed cured and the relationship between the parties continues, governed solely by the provisions of the promissory note and mortgage.[24] Because the secured claim is simply riding through the bankruptcy on its original terms, it is not a "secured claim

---

[20] *See In re Pires*, 2011 WL 5330772 at *5; *In re Legowski*, 167 B.R. 711 (Bankr. D. Mass. 1994).

[21] 11 U.S.C. § 1322(b)(5).

[22] *See Fed. Nat'l Mortg. Ass'n v. Ferreira*, 223 B.R. 258 (D.R.I. 1998); *In re Plourde*, 402 B.R. 488 (Bankr. D.N.H. 2009); *In re Veliz*, No. 08-13292, 2009 WL 3418638 (Bankr. D.R.I. Oct. 16, 2009); *In re Kheng*, 202 B.R. 538 (Bankr. D.R.I. 1996); *In re Murphy*, 175 B.R. 134 (Bankr. D. Mass. 1994); *In re Brown*, 175 B.R. 129 (Bankr. D. Mass. 1994); *In re McGregor*, 172 B.R. at 721.

[23] *Fed. Nat'l Mortg. Ass'n v. Ferreira*, 223 B.R. at 261.

[24] *See In re Pires*, 2011 WL 5330772 at *3.

provided for by the plan" and is not subject to the present value requirement of 11 U.S.C. § 1325(a)(5)(B)(ii).[25]

The question presented is whether a debtor, through what is commonly referred to as a "hybrid plan," may bifurcate a claim pursuant to 11 U.S.C. § 506(a) and then, pursuant 11 U.S.C. § 1322(b)(5), maintain payments on the secured component for a period that exceeds the maximum five year term of the plan until it is paid in full.  Several bankruptcy courts in this circuit have answered the question in the affirmative,[26] most notably *In re McGregor*, while other courts, including the United States Court of Appeals for the Ninth Circuit, have answered with a resounding "no."[27]  From the outset, it is unclear where exactly hybrid plans are supposed to fit within the Bankruptcy Code—whether one of the two well-established options discussed above or something altogether different—largely because the rationales offered in support of them are somewhat fluid.  Indeed, a central theme of the Debtor's argument is that he is *not* proposing to modify Hyde Park's rights, suggesting that the hybrid plan now before me is one in name only and does not borrow elements from both 11 U.S.C. § 1322(b)(2) and 11 U.S.C. § 1322(b)(5).

The genesis of the hybrid plan is Judge Queenan's decision in *In re McGregor*, albeit in dicta.  In *In re McGregor*, the debtor sought to bifurcate the secured creditor's claim pursuant to 11 U.S.C. § 1322(b)(2), reduce the interest rate from 10.5% to 8%, and pay the secured

---

[25] 11 U.S.C. § 1325(a)(5)(B)(ii).

[26] *In re Plourde*, 402 B.R. at 491-492; *In re Veliz*, 2009 WL 3418638 at *1; *In re Kheng*, 202 B.R. at 539-540; *In re Murphy*, 175 B.R. at 137; *In re Brown*, 175 B.R. at 133; *In re McGregor*, 172 B.R. at 721; *see also Fed. Nat'l Mortg. Ass'n v. Ferreira*, 223 B.R. at 262.

[27] *Enewally v. Washington Mutual Bank (In re Enewally)*, 368 F.3d 1165 (9th Cir. 2004); *In re Pires*, 2011 WL 5330772 at *7; *In re Russell*, 458 B.R. 731 (Bankr. E.D. Va. 2010); *In re Stivender*, 301 B.R. 498, 501 (Bankr. S.D. Ohio 2003); *In re Koper*, 284 B.R. at 756; *In re Legowski*, 167 B.R. at 716.

component of the claim over the twenty-two years remaining under the note.[28] Judge Queenan ruled that the debtor could not rely on 11 U.S.C. § 1322(b)(5) for this treatment, concluding that the change in the amount of the monthly payments occasioned by the reduced interest rate could "hardly constitute[] 'maintenance of payments.'"[29] Still, he went on to propose alternative treatment that he reasoned would permissibly allow for bifurcation without requiring payment in full during the term of the plan:

> The Debtor may nevertheless take advantage of 1322(b)(5) by keeping the same 10.5% contract rate and making the same payments of principal and interest called for by the note during the life of the plan and during such further period of time as is necessary to have the total principal payments equal the amount of the secured claim as valued by this court. There would then be "maintenance of payments." And those payments would be maintained on the "secured claim" as that claim is computed in accordance with section 506(a). The three to five year limitation on plan payments of section 1322(c) would then have no application because section 1322(b)(5) permits payments lasting longer than five years. It speaks of maintenance of payments on a claim "on which the last payment is due after the date on which the final payment under the plan is due."
>
> It is true that *Nobelman* [*v. American Savs. Bank*, 508 U.S. 324 (1993)] holds a proposal of payments pursuant to bifurcation constitute modification of the "rights" of the holder of the secured claim within the meaning of section 1322(b)(2). Presumably, if only subsection (b)(2) were applicable, the payments would have to be completed within five years. But subsection (b)(5) provides independent support for such a plan. Subsection (b)(5) does not require the plan proponent to avoid modification of the "rights" of the secured claim holder. Its command is complied with so long as payments are maintained on the "secured claim." The amount of the secured claim is determined by valuation pursuant to section 506(a). This wording avoids the fine distinction made in *Nobelman*, based on the wording of subsection (b)(2), between modification of the "rights" of a secured claim holder and modification of the "secured claim." Subsection (b)(5), moreover, provides that its provisions control "notwithstanding paragraph (2) of this subsection."[30]

---

[28] *In re McGregor*, 172 B.R. at 719.

[29] *Id.* at 721.

[30] *Id.*

In sum, Judge Queenan reasoned that 11 U.S.C. § "1325(b)(5) permits payments lasting longer than five years" without "requir[ing] the plan proponent to avoid modification of the 'rights' of the secured claim holder . . . so long as payments are maintained on the 'secured claim.'"[31] That said, the rationale is ambiguous with respect to whether the debtor is, in fact, modifying the secured claim holder's rights. On the one hand, Judge Queenan conceded that the Supreme Court of the United States held that "a proposal of payments pursuant to bifurcation constitute[s] modification of the 'rights' of the holder of the secured claim within the meaning of section 1322(b)(2)," and that "[s]ubsection (b)(5) does not require the plan proponent to avoid modification of the 'rights' of the secured claim holder," but then stated that "[t]he amount of the secured claim is determined by valuation pursuant to section 506(a) . . . avoid[ing] the fine distinction made in *Nobelman* . . . between modification of the 'rights' of a secured claim holder and modification of the 'secured claim.'"[32] His final bare reference to the "notwithstanding paragraph (2) of this subsection" language in 11 U.S.C. § 1322(b)(5) further confuses matters.

The Debtor, purporting to rely on *In re McGregor*'s reasoning, asserts that "equat[ing] bifurcation of a claim into secured and unsecured portions pursuant to [section] 506(a) with modification of a creditor's rights pursuant to section 1322(b)(2) would . . . be inaccurate . . . ."[33] In an apparent nod to Judge Queenan's focus on "valuation pursuant to section 506(a)," the Debtor contends that 11 U.S.C. § 506(a) simply defines the secured claim without modifying the creditor's rights. Admittedly, *In re McGregor* is susceptible to that reading and other courts

---

[31] *Id.*

[32] *Id.*

[33] Debtor's Memorandum, Docket No. 95 at 8.

have reached the same conclusion.[34] The problem is that the Supreme Court expressly rejected that argument in *Nobelman*.

In *Nobelman*, the debtor proposed a Chapter 13 plan seeking to bifurcate the bank's secured claim pursuant to 11 U.S.C. § 506(a) such that he would make the contractual mortgage payments only up to the amount of the secured component of the claim and treat the remainder as an unsecured debt, which would receive nothing under the plan.[35] The bank's claim, however, was secured only by the debtor's principal residence.[36] Both the bank and the Chapter 13 trustee objected on the basis that 11 U.S.C. § 1322(b)(2) prohibits such a modification, but the debtor argued the plan contained no such modification because 11 U.S.C. § 506(a) automatically adjusts the bank's claim to account for the unsecured portion before any disposition is proposed through the plan.[37] As such, he continued, the bank's rights as the holder of the secured claim remain untouched despite the unconditional modification unsecured claim.[38] The Supreme Court rejected the debtor's interpretation as failing "to take adequate account of § 1322(b)(2)'s focus on 'rights,'" noting that the bank nonetheless remained the holder of a secured claim despite bifurcation of its claim.[39] The Supreme Court went on to hold that the bank's rights arising from the relevant mortgage instruments are not limited by the valuation of its secured claim and are protected from modification by 11 U.S.C. § 1322(b)(2).[40] Although *Nobelman* involved a claim

---

[34] *See, e.g.*, *In re Kheng*, 202 B.R. at 539 (holding bifurcation is not a modification of the creditor's rights); *In re Murphy*, 175 B.R. at 137 n.2 (suggesting that the question remains open as to whether bifurcation alone modifies the rights of the secured claim holder).

[35] *Nobelman v. American Savs. Bank*, 508 U.S. at 326.

[36] *Id.*

[37] *Id.* at 328

[38] *Id.*

[39] *Id.* at 328-329.

11

secured only by the debtor's principal residence, the holding makes clear that bifurcation pursuant to 11 U.S.C. § 506(a) is, by itself, a modification of the secured creditor's rights pursuant to 11 U.S.C. § 1322(b)(2).

For the sake of completeness, I note that in *In re Pires*, Chief Judge Bailey also rejected the possibility that 11 U.S.C. § 1322(b)(5), by itself, authorizes modification of the secured claim,[41] an idea perhaps arising from Judge Queenan's statement that "subsection (b)(5) provides *independent* support for such a plan."[42] While I find such an argument inherently at odds with *Nobelman*, I agree with Chief Judge Bailey that interpreting 11 U.S.C. § 1322(b)(5) as a modification provision otherwise presents insurmountable difficulties in the construction of and interplay between 11 U.S.C. §§ 1322 and 1325(a).[43] Most notably, such a reading would relieve the debtor of 11 U.S.C. § 1322(b)(2)'s restriction on the modification of a claim "secured only by a security interest in real property that is the debtor's principal residence,"[44] and would, in effect, "have Congress giving with the one hand precisely what it took away with the other . . . ."[45] This cannot be as "a cardinal principle of statutory construction is that a statute ought, on the whole, to be so construed that . . . no clause, sentence, or word shall be superfluous, void, or insignificant."[46]

---

[40] *Id.* at 329-330.

[41] *In re Pires*, 2011 WL 5330772 at *7.

[42] *In re McGregor*, 172 B.R. at 721 (emphasis added).

[43] *In re Pires*, 2011 WL 5330772 at *5-7.

[44] 11 U.S.C. § 1322(b)(2).

[45] *In re Pires*, 2011 WL 5330772 at *6.

[46] *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001).

This, however, does not end the inquiry, but merely shifts it to an alternative interpretation of *In re McGregor* that does not avoid modification of the secured creditor's rights, but embraces it. Under this formulation, that the debtor first modifies the claim pursuant to 11 U.S.C. § 1322(b)(2), albeit by bifurcating the claim under 11 U.S.C. § 506(a), and then cures the arrearage and maintains the contractually due payments pursuant to 11 U.S.C. § 1322(b)(5) until the secured component of the modified claim is paid in full. Several courts have endorsed this view, holding that 11 U.S.C. §§ 1322(b)(2) and (b)(5) are not mutually exclusive.[47] In support, these courts note that 11 U.S.C. §§ 1322(b)(1)-(11) are connected by the conjunctive "and,"[48] and that 1325(b)(5) expressly provides for curing defaults and maintaining payments "on *any* unsecured claim or secured claim,"[49] suggesting that the secured portion of an undersecured claim qualifies.[50]

Ultimately, trying to reconcile subsections (2) and (5) of 11 U.S.C. § 1322(b) with each other emphasizes the critical infirmity contained within *In re McGregor*. The conceit upon which *In re McGregor* is premised is that 11 U.S.C. § 1322(b)(5) authorizes something that 11 U.S.C. § 1322(b)(2) does not. As explained by Judge Dabrowski of the United States Bankruptcy Court for the District of Connecticut in *In re Koper*:

> *McGregor* and its progeny focus, if at all, on the fact that subsection (b)(5), by its terms, addresses claims "on which the last payment is due after the date on which the final payment under the plan is due" (hereafter, the "Long Term Debt

---

[47] *See, e.g.*, *Fed. Nat'l Mortg. Ass'n v. Ferreira*, 223 B.R. at 261; *In re Elibo*, 447 B.R. 359 (Bankr. S.D. Fla. 2011); *In re Plourde*, 402 B.R. at 492; *In re Veliz*, 2009 WL 3418638 at *1.

[48] 11 U.S.C. § 1322(b).

[49] 11 U.S.C. § 1322(b)(5) (emphasis added). I note, however, that the statute does not say "any . . . secured claim," but "any . . . secured claim *on which the last payment is due after the date on which the final payment under the plan is due*. . . ." *Id.*

[50] *See, e.g.*, *Fed. Nat'l Mortg. Ass'n v. Ferreira*, 223 B.R. at 261; *In re Plourde*, 402 B.R. at 492; *In re Veliz*, 2009 WL 3418638 at *1.

>Reference"). In essence, these authorities interpret the Long Term Debt Reference as a license for long term *treatment*, *i.e.* treatment which extends beyond the permissible duration of a plan.[51]

This Long Term Debt Reference, however, merely identifies the type of claim to which 11 U.S.C. § 1322(b)(5) applies—not just any secured claim, but "any . . . secured claim on which the last payment is due after the date on which the final payment under the plan is due"[52]—it grants no substantive license to extend payments past the expiration of the plan.[53] To the contrary, the only permissive statement in the subsection is that the plan may "provide for . . . maintenance of payments *while the case is pending*."[54] Moreover, when Judge Queenan stated that "[t]he three to five year limitation on plan payments of section 1322[(d)] would then have no application because section 1322(b)(5) permits payments lasting longer than five years," he failed to consider that 11 U.S.C. § 1322(b)(5) is also expressly subject to the subsection (d).[55] To the extent that payments continue past the expiration of the plan, it is only because original terms of the obligation were not modified and the secured claim is not provided for by the plan.

Undoubtedly, the Debtor would argue—had he realized that *Nobelman* expressly holds that a bifurcation of a claim is a modification of rights under 11 U.S.C. § 1322(b)(2)—that even post-modification, the date upon which the final payment required to retire the debt is made would still be a date after the final plan payment would be due. In other words, bifurcation of a claim, without more, only modifies some rights of the holder of the secured claim and the proposed treatment can still fit within the meaning of "maintenance of payments" under 11

---

[51] *In re Koper*, 284 B.R. at 747 (emphasis in original).

[52] 11 U.S.C. § 1322(b)(5).

[53] *In re Pires*, 2011 WL 5330772 at *6; *In re Koper*, 284 B.R. at 754.

[54] 11 U.S.C. § 1322(b)(5) (emphasis added).

[55] *In re Pires*, 2011 WL 5330772 at *6; *In re Koper*, 284 B.R. at 754.

14

U.S.C. § 1322(b)(5). I disagree. First, 11 U.S.C. § 1322(b)(5) contemplates a due date for the secured claim's final payment, not a date upon which the aggregate maintained contractual payments fully amortize the secured component of the claim. Second, and more importantly, regardless of its scope, a bifurcation of a claim is a modification under 11 U.S.C. § 1322(b)(2), and claims so modified must be paid through the plan.[56] Third, simply by virtue of the modification itself, the secured claim is "provided for by the plan" as the plan redefines the payment terms,[57] rendering it subject to the confines of 11 U.S.C. §§ 1322(d) and 1325(a)(5)(B)(ii).[58] Section 1325(b)(5) offers no relief from these provisions, particularly as it is expressly no less subject to the requirements of 11 U.S.C. § 1322(d) than 11 U.S.C. § 1322(b)(2).

The Debtor urges that this reading renders both 11 U.S.C. §§ 506(a) and 1322(b)(5) moot. While I agree that 11 U.S.C. §§ 1322(d) and 1325(a)(5)(B)(ii) may limit the availability of 11 U.S.C. § 506(a) for most Chapter 13 debtors—a consequence that is well-established under 11 U.S.C. § 1322(b)(2) and the reason why the hybrid plan was conceived—it is hardly moot. Similarly, it is grossly inaccurate to suggest it renders 11 U.S.C. § 1322(b)(5) moot because even in the absence of bifurcation, curing prepetition defaults and maintaining payments remains the most viable option for the average Chapter 13 debtor. In contrast, the Debtor's interpretation of the interplay of these provisions would render the restrictions placed on 11 U.S.C. § 1322(b)(2) modifications superfluous.[59]

---

[56] *See In re Harris*, 200 B.R. at 748-749.

[57] *In re Russell*, 458 B.R. at 739 (noting that when the plan defines the terms of payment, the payments are made "under" the plan regardless of whether the payments are to be made through the Chapter 13 trustee or directly to the creditor).

[58] *In re Pires*, 2011 WL 5330772 at *6; *In re Russell*, 458 B.R. at 739; *In re Legowski*, 167 B.R. at 715-716.

[59] *TRW Inc. v. Andrews*, 534 U.S. at 31.

For all these reasons, I find that 11 U.S.C.§§ 1322(b)(2) and (5) are mutually exclusive and that a plan that proposes to both modify the rights of the secured claim holder and thereafter cure and maintain payments on the secured portion of the claim for a period that exceeds the term of the plan cannot be confirmed over the creditor's objection.

## V. <u>CONCLUSION</u>

In light of the foregoing, I will enter an order sustaining the Objection and directing the Debtor to file a further amended plan within thirty days.

*[signature: William C. Hillman]*

_____
William C. Hillman
United States Bankruptcy Judge

Dated: July 24, 2012

Counsel Appearing:

    Avi L. Liss, Haneen Kutub, Liss Law, LLC, Brookline, MA,
        for the Debtor
    Amy Lipman-White, Stanton & Davis Marshfield, MA,
        for Hyde Park Savings Bank